IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: OTIS W. TERRY, JR. | : | CIVIL ACTION |
| | : | NO. 14-6195 |
| | : | |
| | : | CIVIL ACTION |
| | : | NO. 15-0913 |
| | : | |
| | : | (BANKRUPTCY NO. 13-14780) |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                      **December 21, 2015**

   The City of Philadelphia appeals from the bankruptcy court's orders approving a settlement between the debtor and the purchaser of the debtor's real estate at a Sheriff's tax sale, and confirming the debtor's Chapter 13 plan which enabled the debtor to redeem his real estate.  The City's central contention is that the bankruptcy court's avoiding the Sheriff's deed conveying the debtor's property to the purchaser at the Sheriff's sale impermissibly allowed the debtor to redeem the property in contravention of Pennsylvania law.  The City contends that the avoidance deprived it of the transfer tax paid on the Sheriff's conveyance to the purchaser and the transfer tax that would have been due on the purchaser's conveyance back to the debtor.

   The threshold issue is whether the City, a creditor whose claim has been paid in full, can appeal the orders, which may, but not necessarily, affect its interest.  We conclude that because the orders have no direct and immediate impact on the City, it lacks standing to appeal.  Therefore, we shall dismiss the appeals.

### Factual and Procedural Background

   Debtor Otis W. Terry, Jr.'s real property, 7128 Mount Airy Place, Philadelphia ("Property"), was sold at Sheriff's sale to 2013 N. 16th St., LLC ("2013 LLC") for

$120,000.00 on September 19, 2012. After 2013 LLC paid the bid price, the Sheriff signed and delivered a deed conveying the Property to 2013 LLC on December 11, 2012. After recording the deed, 2013 LLC filed a complaint in ejectment in the Philadelphia Court of Common Pleas. Default judgment was entered on April 2, 2013. The next day, 2013 LLC filed a praecipe for writ of possession.

To stave off ejectment, Terry filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on May 30, 2013. Five days later, 2013 LLC filed a motion for relief from the automatic stay to allow the ejectment process to continue. After holding a hearing, the bankruptcy court denied the motion because it determined that Terry's right to redeem the Property had not yet expired. 2013 LLC filed a second motion on October 7, 2013, arguing that Terry's right of redemption had expired when he failed to pay the redemption amount on or before September 12, 2013, the last day of the redemption period under 53 P.S. § 7293. The bankruptcy court denied 2013 LLC's second motion. It held that Terry had exercised his right of redemption when he filed his Chapter 13 Plan within the redemption period even though his proposed plan called for payment of the redemption amount over time.[1]

Terry and 2013 LLC filed a Stipulation of Settlement, requesting a consent order designating 2013 LLC as the holder of an allowed claim for $125,624.66, secured by Terry's interest in the Property. The stipulation called for the Sheriff to pay Terry $64,000.00 from the sale proceeds. From this amount, Terry was required to pay $14,000.00 to 2013 LLC upon entry of the consent order, followed by forty-four monthly payments of $1,200.00 to commence twenty days after confirmation of the plan. It also

---

[1] *See In re Terry*, 505 B.R. 660, 668 (Bankr. E.D. Pa. 2014).

called for the bankruptcy court to order the Sheriff to turn over to Terry the balance of the sale proceeds and to declare the Sheriff's deed conveying the Property to 2013 LLC void. The stipulation did not affect the Sheriff's distribution to the City from the sale proceeds.

At a hearing on its objection to the Stipulation of Settlement, the City argued that the *Rooker-Feldman* doctrine divested the bankruptcy court of jurisdiction to grant the relief sought in the Stipulation of Settlement. It also asserted that the bankruptcy court could not enter the proposed consent order without joining the Sheriff.[2]

The bankruptcy court determined that the *Rooker-Feldman* doctrine did not apply. The court made clear that it was not reviewing or rejecting the judgment that instigated the Sheriff's sale. To moot the joinder issue, it directed removal from the proposed consent order of any reference directing the Sheriff to take action. The court entered a Consent Order, which incorporated the Stipulation of Settlement, with the revised language, on September 18, 2014.

On February 6, 2015, the bankruptcy court entered an order (the "Confirmation Order") confirming the First Amended Chapter 13 Plan (the "Plan") submitted on June 25, 2014. The Plan provided for payment in full of all allowed claims, including 2013 LLC's claim, and the priority claims of the City and the Commonwealth of Pennsylvania for unpaid taxes.

The City had moved to dismiss Terry's Chapter 13 case on the basis that Terry's petition was filed in bad faith and that it constituted an impermissible exercise of Terry's

---

[2] The City also objected to Terry's standing to seek the relief requested in the stipulation under §§ 544 and 548 of the Bankruptcy Code. However, the bankruptcy court dismissed this objection summarily because § 522(h) of the Code provides that Terry could avoid the transfer of the Property in the absence of the Trustee's doing so. *In re Terry*, 521 B.R. 90, 93 n.4 (Bankr. E.D. Pa. 2014).

redemption rights under Pennsylvania law. It also argued that Terry's death on November 10, 2014 prevented confirmation of the Plan under Federal Rule of Bankruptcy Procedure 1016. The bankruptcy court denied the motion on February 10, 2015.

The City appeals both the Consent Order and the Confirmation Order. With respect to the Consent Order, the City reiterates its argument that the *Rooker-Feldman* doctrine prevented the bankruptcy court from avoiding the transfer to 2013 LLC as provided in the Stipulation of Settlement because it disturbed a state court judgment. It also asserts that the bankruptcy court erred when it avoided the transfer of the Property resulting from the tax sale under §§ 544 and 548 of the Bankruptcy Code.

With respect to the Confirmation Order, the City asserts that the Plan rests upon an impermissible exercise of Terry's redemption rights. It reasserts its arguments that Terry's petition was filed in bad faith and that the bankruptcy court should have dismissed the case due to Terry's death under Federal Rule of Bankruptcy Procedure 1016.

## Standard of Review

A district court reviews a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof." *In re Reilly*, 534 F.3d 173, 175 (3d Cir. 2008) (citing *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)), *rev'd on other grounds*, *Schwab v. Reilly*, 560 U.S. 770 (2010). Where the bankruptcy court's decision involves a mixed question of law and fact, we must parse the factual and legal determinations, and then apply the appropriate

4

standard of review to each one. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).

The bankruptcy court's factual findings will not be disturbed unless they are clearly erroneous. *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011) (quoting Fed. R. Bankr. P. 8013)); *In re IT Grp., Inc.*, 448 F.3d 661, 667 (3d Cir. 2006); Fed. R. Bankr. P. 8013 Advisory Committee's Note. A factual finding is clearly erroneous if the district court is firmly convinced, based on all the evidence, that the bankruptcy court made a mistake. *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 468 (3d Cir. 2013) (citation omitted). The district court may not engage in independent fact finding. *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 210 n.19 (3d Cir. 1995) (citing 28 U.S.C. § 158(a)).

## Standing to Appeal

Although the bankruptcy court accorded the City standing to object to the stipulation of settlement and confirmation of the plan, we still must determine whether it has standing to appeal the orders endorsing the settlement and confirming the plan. The standing requirements at the bankruptcy court and the district court levels are different. *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641-42 (2d Cir. 1988)). All debtors and creditors, as the City was, are parties to every bankruptcy court order. But, status as a creditor alone does not confer standing to appeal an order.

Only a "person aggrieved" by a bankruptcy court's order may appeal. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) (citing *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). One qualifies as a "person aggrieved" if the order "diminishes

[the appellant's] property, increases [its] burdens, or impairs [its] rights." *Id.* (citing *In re PWS Holding Corp.*, 228 F.3d at 249). Thus, the City must demonstrate that it was "directly and adversely affected pecuniarily" by the order. *Id.* (citing *In re Dykes*, 10 F.3d at 187) (footnote omitted).

More stringent than standing under Article III, standing to appeal in the bankruptcy context is limited to those whose interests are directly affected. *In re Combustion Eng'g*, 391 F.3d at 215 (citing *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)). In other words, the effect must be more than incidental or indirect. The limitation recognizes that bankruptcy litigation often implicates the interests of many persons who are not parties to the litigation. *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (2d Cir. 1999). The bankruptcy standing requirement is necessary to preclude those who are only indirectly affected by an order from appealing. *In re Combustion Eng'g*, 391 F.3d at 215. Otherwise, any party could appeal, regardless of whether it was directly, indirectly or tangentially affected. 10 Collier on Bankruptcy ¶ 8003.03, p. 8003-4 (16th ed. 2015).

A party whose interest may be potentially, but not immediately and directly, harmed has no standing to appeal. *In re Combustion Eng'g*, 391 F.3d at 215. Injury that is speculative or remote does not confer standing. *Travelers*, 45 F.3d at 742; *see In re Barnet*, 737 F.3d 238, 243 (2d Cir. 2013); *In re Thorpe Insulation Co.*, 393 F. App'x 467, 470 (9th Cir. 2010). Similarly, a party who may suffer only "collateral damage" from a bankruptcy ruling lacks standing. *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (party that would be injured as collateral result of settlement between debtor and creditor lacked standing).

The City claims that it suffered injury as a result of the order avoiding the Sheriff's deed. It asserts that it will have to refund the transfer tax originally paid on the conveyance from the Sheriff to 2013 LLC, and it will not collect a transfer tax upon conveyance of the Property from 2013 LLC to Terry.

Neither the Consent Order nor the Stipulation of Settlement addresses liability for transfer taxes. Although the Stipulation of Settlement included a request that the bankruptcy court order that the tax sale was void, the bankruptcy court made clear that it was not determining that the sale was void *ab initio*, but rather that it was avoiding the deed and the resultant transfer to 2013 LLC. The proposed Consent Order was revised to reflect this ruling.

The City contends that because the sale was not void *ab initio*, the transfer tax paid on the Sheriff's conveyance to 2013 LLC was properly paid and an additional transfer tax is due on the reconveyance of the Property to Terry. The issue was not properly before the bankruptcy court. Nor is it before the district court. Liability for the transfer tax is addressed in another forum—the Philadelphia Tax Review Board. No one can predict how, if at all, that forum will rule. Nor is it certain that anyone will petition the Tax Review Board for relief.

The City has not suffered a direct injury. Instead, the injury, if any, is contingent. 2013 LLC has not filed a petition for a refund of the transfer tax paid on the transfer from the Sheriff. The effect of the bankruptcy court's orders on the City's interest in the transfer tax is speculative and remote. It is incidental. It is not direct.

As a creditor, the City was paid in full. The confirmed plan provided payment of all the City's claims, including the real estate taxes which resulted in the Sheriff's sale.

Its status now is not as a creditor, but as a third party indirectly affected by the bankruptcy order.

Because the City did not suffer a direct and adverse pecuniary effect arising from the bankruptcy court's orders, it lacks standing to appeal. Therefore, we shall dismiss the appeals.

Even if the City had standing, it would not prevail. We now explain why.

### *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars a federal court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In short, a federal court lacks subject matter jurisdiction over an action in the nature of an appeal seeking to reverse a state court decision. *See id.* at 293.

The doctrine applies only where: (1) the plaintiff in the federal action lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the judgment was entered before the federal suit was filed; and (4) the plaintiff seeks federal review and rejection of the state court judgment. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil*, 544 U.S. at 284). Factors two and four have been characterized as substantive; and one and three, procedural. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The procedural posture is rarely at issue. *See id.* at 89. The factors that typically drive the inquiry are two and four, the substantive ones. They are key to

determining whether a federal suit brought by a state-court loser is barred by the doctrine or presents a non-barred independent claim. *Id.* at 85-87.

Here, factors one and three are satisfied. Terry lost in the state court action brought by the City to recover delinquent real estate taxes, and judgment was entered before he filed his bankruptcy petition. Hence, we consider whether he seeks a remedy for an injury caused by the state court judgment and whether his petition in bankruptcy court was essentially a request to review and reject that judgment.

The judgment resulting in the tax sale is the source of Terry's injuries. Had the judgment not been entered, there would have been no forced sale of the Property and, in turn, nothing to redeem. Therefore, the second factor is satisfied.

The fourth factor is not satisfied. Terry did not ask the bankruptcy court to overturn the state court judgment. Instead, he acknowledged that the judgment upon which the Sheriff's sale was premised was valid. He only requested the bankruptcy court to enforce his rights under Pennsylvania law to redeem the Property. To grant Terry relief, the bankruptcy court was not required to reject or disturb the state court judgment.

The bankruptcy court did not reject the state court judgment. On the contrary, it gave effect to it. Although the Consent Order avoided the Sheriff's deed, it did not disturb the underlying judgment.[3] The judgment was satisfied. The City was paid the full amount of the judgment from the purchase price paid by 2013 LLC. The avoidance of the deed was the consequence of Terry's exercising his right of redemption, an event that occurred after the judgment had been satisfied.

---

[3] Sept. 18, 2014 Consent Order, at ¶¶ 5-6 (Doc. No. 92, Bankr. No. 13-14780); *see* 7/21/14 Hr'g Tr. at 17:24-25 ("I'm not about to make any finding that says that this is a void sale."), 19:5-22.

Significantly, bankruptcy courts are empowered to avoid, modify and discharge state court judgments under the Bankruptcy Code. *In re Knapper*, 407 F.3d 573, 583 n.22 (3d Cir. 2005) (citing *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc)). Here, even though it had the power to do so, the bankruptcy court did not reject or otherwise disturb the judgment. It allowed Terry to redeem the property under Pennsylvania law. When it did so, the bankruptcy court recognized and effectuated the state court judgment. Thus, because Terry is not seeking review or rejection of the state court judgment, the *Rooker-Feldman* doctrine does not apply.

## Redemption of Property

For the first time on appeal, the City argues that when the bankruptcy court confirmed the Plan, it allowed Terry to redeem the Property in contravention of Pennsylvania law. Having failed to raise the issue in the bankruptcy court, it has waived it. *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) (citing *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm L.P. IV*, 229 F.3d 245, 253 (3d Cir. 2000)). Nevertheless, even if the City had not waived the issue, its argument would fail.

State law determines the scope and nature of a debtor's property interests. *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Once those interests are determined, a bankruptcy court has "broad authority to modify creditor-debtor relationships" within the scope of its jurisdiction. *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990).

Pennsylvania's Municipal Claim and Tax Lien Act ("MCTLA"), 53 P.S. §§ 7101-7505, provides that property sold at a tax sale may be redeemed within nine months from the date of the acknowledgment of the Sheriff's deed. 53 P.S. § 7293(a). Section

7293 "is to be liberally construed so as to effect its object and to promote justice." *City of Phila. v. Taylor*, 465 A.2d 33, 35 (Pa. Super. 1983). The MCTLA provides that the purchaser at a tax sale takes "absolute title to the property sold." 53 P.S. § 7283(a). However, the purchaser's title does not become absolute until the redemption period expires. *Hess v. Potts*, 32 Pa. 407, 410-11 (1859); *Shalemiller v. McCarty*, 55 Pa. 186, 188 (1867); *City of Phila. v. Miller*, 126 A.2d 812, 815 (Pa. Super. 1956). In other words, the purchaser acquires a defeasible title, subject to the debtor's equitable right of redemption during the redemption period. *In re Hammond*, 420 B.R. 633, 635 (Bankr. W.D. Pa. 2009); *Hess*, 32 Pa. at 410-11. The debtor's equitable interest in the property inures to the benefit of the bankruptcy estate. *See* 11 U.S.C. § 541(a).

Contrary to the City's contention, § 7293 does not require that the redemption amount be paid in full before the expiration of the redemption period. *City of Phila. v. Chin*, 535 A.2d 110, 112 (Pa. Super. 1987); *Taylor*, 465 A.2d at 35. Rather, § 7293 requires only "that the redemptor *begin* the redemption process" within the time provided by the statute. *Chin*, 535 A.2d at 112 (citing *Taylor*, 465 A.2d at 35).

The City's reliance on *City of Philadelphia v. Keilyk*, 551 A.2d 1094 (Pa. Super. 1988), is misplaced. There, one co-owner attempted to redeem only his proportionate share of the property. 551 A.2d at 1096. The court held that a property may not be redeemed by payment of less than the entire redemption amount. *Id.* It did not hold that the full amount must be paid within nine months. Here, unlike in *Keilyk*, the Plan provides for payment, albeit over time, of the entire redemption amount.

The redemption period began running on December 11, 2012, the date the Sheriff executed and acknowledged the deed conveying the Property to 2013 LLC.

11

Terry had until September 13, 2013 to redeem the Property. He filed his proposed plan on June 13, 2013, which is within the nine-month redemption period. Thus, because Terry exercised his right of redemption within the nine-month redemption period on terms acceptable to the purchaser at the Sheriff's sale, the bankruptcy court did not err in confirming the Plan.

The City's argument that it was denied an opportunity to be heard on the redemption issue is meritless. The City filed an objection to confirmation on September 29, 2014. At the hearing on February 6, 2015, the City could have, but did not, raise the redemption issue.

## Avoidance of Sheriff's Deed

The City argues that the bankruptcy court's avoidance of the Sheriff's transfer to 2013 LLC was impermissible under §§ 544(a)(3) and 548(a)(1) of the Code. The City asserts that the bankruptcy court improperly avoided the transfer of the Property pursuant to §§ 544 and 548 without conducting an evidentiary hearing.

Like the redemption issue, the City has waived its right to complain about the lack of an evidentiary hearing on the avoidance issue. In its objection to the Stipulation of Settlement, the City raised three issues: the *Rooker-Feldman* doctrine; failure to join a required party, the Sheriff; and whether Terry could exercise the trustee's avoidance powers under § 522(h). It did not contend that the avoidance was impermissible under §§ 544 and 548.

A bankruptcy court is required to hold an evidentiary hearing only when a party objects to a proposal. *In re Pa. Gear Corp.*, No. 04-5101, 2005 WL 615750, at *2 (E.D. Pa. Mar. 11, 2005) (citing *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002); *In re*

*Martin*, 91 F.3d 389, 393 (3d Cir. 1996)). The City never requested an evidentiary hearing. At the July 21, 2014 hearing,[4] it did not argue why §§ 544 and 548 did not apply. Therefore, because it did not raise the avoidance issue, the City waived it.

## Bad Faith

The City asserts that Terry, who had no pre-petition debt, filed his Chapter 13 petition to circumvent the redemption requirements under the MCTLA. Thus, it argues, Terry filed his bankruptcy petition in bad faith.

Terry's lack of pre-petition debt, in itself, does not demonstrate bad faith. The Bankruptcy Code does not bar a solvent debtor from filing for bankruptcy protection. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 163-64 (3d Cir. 1999)). The debtor need only be in "financial distress." *Id.* Given the circumstances leading to the tax sale, one could reasonably conclude that Terry was financially distressed. Therefore, the bankruptcy court did not abuse its discretion in refusing to dismiss the case for bad faith.[5]

## Rule 1016

Rule 1016 provides that as a result of the death or incompetency of the debtor in a Chapter 13 case, "the case *may* be dismissed; or if further administration is possible and in the best interest of the parties, the case *may* proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred." Fed. R. Bankr. P. 1016 (emphases added). A bankruptcy court may

---

[4] *See, e.g.*, 7/21/14 Hr'g Tr. at 7:8-8:10; 28:23-29:7; 29:18-24; 32:18-33:19; 33:20-34:9; 36:8-37:10.

[5] The City also argues, without citing any authority, that Terry's "treatment of creditors" indicates bad faith. Because the City did not include this argument in its objection to confirmation, we do not address it here.

continue with the proceedings after the debtor's death. *See, e.g.*, *In re Querner*, 7 F.3d 1199, 1200-01 & n.1 (5th Cir. 1993); *In re Fogel*, No. 14-1851, --- B.R. ----, 2015 WL 5032055, at *2 (D. Colo. Aug. 26, 2015).

Here, the bankruptcy court found that the Plan provided for payment in full to the creditors and was not dependent on Terry's income.[6]  In addition, as the parties stipulated, Terry's sister, Patricia Terry, has been making the $1,200.00 monthly payments required by the Plan since Terry's death.[7]  Under these circumstances, there is no basis for finding that the bankruptcy court abused its discretion in allowing the case to proceed under Rule 1016.

## Conclusion

Because the City did not suffer a direct and adverse pecuniary injury, it has no standing to appeal the bankruptcy court orders approving the settlement between Terry and 2013 LLC and confirming Terry's Chapter 13 Plan.  Therefore, we shall dismiss the appeals.

---

[6] *In re Terry*, No. 13-14780, 2015 WL 1321486, at *4 (Bankr. E.D. Pa. Mar. 13, 2015).

[7] *Id.* at *2; *see* 2/6/15 Hr'g Tr. at 49:22-50:9.